United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>**Edward C. Richerme,**<br><br>　　　　　　　　　　　Debtor.<br><br>**Engineered Abrasives, Inc.,**<br><br>　　　　　　　　　　　Plaintiff<br><br>　　　v.<br><br>**Edward C. Richerme,**<br><br>　　　　　　　　　　　Defendant. | Bankruptcy No. 15 B 16083<br><br>Chapter 11<br><br>Adversary No. 15 A 00569 |

## MEMORANDUM OPINION ON RICHERME'S MOTION TO DISMISS

Defendant Edward C. Richerme ("Richerme" or "Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code on May 5, 2015. Engineered Abrasives, Inc. ("EA") filed this adversary complaint to determine dischargeability of the debt owed to it by Richerme pursuant to a judgment, which EA alleges is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6). Richerme has filed a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)). For the following reasons, that motion will be denied.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), all well-pleaded facts alleged in the complaint are accepted as true, and all reasonable inferences from those facts are drawn in favor of the non-moving party. *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 908 (7th Cir. 2013). Facts evident from exhibits attached to the complaint are also considered. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Complaint and its exhibits disclose the following relevant facts.

Plaintiff EA designs, manufactures, and services automated shot peening and blast finishing equipment. Debtor was an employee of EA for nearly 20 years and had access to and knowledge of EA's parts, customers and business information. Debtor's father was also an employee of EA.

While Debtor was still an employee of EA and without EA's knowledge, Debtor and his father are alleged to have started a directly competing company, American Machine Products & Services, Inc. ("AMPS"). Debtor downloaded EA business information to his home computers, and sold inventory of EA with a retail value of more $680,000 to AMPS's customers. Business and proprietary information of EA was allegedly used in connection with AMPS's business, and provided to third parties.

On October 11, 2013, EA filed a case in the District Court for the Northern District of Illinois against Debtor, Debtor's father, and AMPS alleging trademark and copyright infringement, unfair competition, and deceptive trade practices. Although an attorney appeared on their behalf, the defendants failed to answer or otherwise plead to the complaint and a motion for default judgment was filed by EA.

On January 29, 2014, the court entered an order of default against the defendants, and set the case over for hearing on damages and other relief sought by EA. Discovery was conducted in connection with those proceedings. Two depositions of the Debtor were taken in April 2014.

On October 22, 2014, the district court defendants and EA, through their respective counsel, submitted an Agreed Statement and Stipulated Facts, which included the facts alleged above. Extensive discovery was conducted and, on November 21, 2014, a full day evidentiary hearing was held.

On March 18, 2015, the District Court entered a thirty-three page Opinion and Order (the "D.C. Order"), awarding EA judgment for a total of $719,814.04 in damages, attorney fees and costs. The judgment is owed by Debtor and his codefendants jointly and severally. The D.C. Order and award were based on evidence presented at the hearing and the parties' other submissions, and included both findings of fact and conclusions of law based on those facts, which are described in detail in that order.

The D.C. Order stated that in 2009, in connection with a new EA fulfillment company, ER Parts, Inc., EA delivered EA parts to Debtor's Mokena property residence, and Debtor's parents inventoried and valued the EA parts at $685,602.96. Although EA directed that all parts be returned to EA, the defendants retained some of the parts at

Debtor's residence and AMPS's place of business. The defendants never paid EA for those parts.

On September 12, 2011, more than a month before his employment with EA ended Debtor opened AMPS business accounts. The defendants generated invoices for work with EA customer Borg Warner within days of his termination from EA for work similar to the work he had performed as an EA employee only several months before. Debtor and his father operated AMPS in direct competition with EA, and represented that AMPS could supply EA parts and service EA machines, often at a reduced price. Debtor used the EA parts located at his residence and AMPS's place of business, and attempted to conceal that those parts belonged to EA by burning and/or sanding off the EA name and part numbers from the products.

Debtor and his father were found to have left EA with large collections of EA's confidential and/or proprietary information, including CAD drawings, proposals and details about EA's part system in digital form as well as hard copy form. The defendants used EA's parts lists, which also included EA's pricing information, to enable AMPS to quote prices to EA's customers below those offered by EA. The D.C. Order describes several instances where the defendants used these documents or provided them to customers of EA.

The D.C. Order also stated that the defendants continued to violate the Lanham Act – supplying EA's parts, representing that they can service EA machines, and seeking workarounds to use their knowledge and the EA documents in their possession to obtain business from EA's customers – despite the pending suit and entry of a default therein.

Damages were awarded based on evidence of AMPS's profits during the period of the violations described in the D.C. Order, including attorney's fees and costs.

## DISCUSSION

### JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is

3

thereby referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### SUFFICIENCY OF THE PLEADINGS

Debtor's ground for dismissal, applicable to each count of the complaint, is failure to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must give the defendant "fair notice" of each claim and present facts suggesting a right to relief that is plausible rather than merely speculative. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plausibility in this context means that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### COLLATERAL ESTOPPEL

Count I of the complaint seeks a declaration that relevant determinations giving rise to the judgment (included in the D.C. Order) have preclusive effect in EA's nondischargeability claims, set forth in Counts II, III and IV. Richerme's primary argument for dismissal is that collateral estoppel does not apply because the debt arose from entry of a default judgment on January 29, 2014. (*See* Motion to Dismiss, Dkt. 8, at 1.) This argument does not warrant dismissal of the complaint for failure to state a claim.

As a preliminary matter, Richerme's reference to entry of default judgment on January 29, 2014 is incorrect. The judgment alleged in the complaint was entered by the District Court on March 19, 2015 pursuant to the D.C. Order. (*See* Comp. ¶ 47, Ex. A-3.) Exhibits attached to the complaint support this conclusion. The District Court docket entry made on January 29, 2014 in the case referred to specified as follows:

> MINUTE entry before the Honorable John F. Grady: The court has considered the Plaintiff's F.R.C.P. 55 motion for default judgment [10]. It appears that the defendants were duly served, and, on November 19, 2013, an attorney, Theresa Ann Berkey, filed an appearance for them. However,

> despite repeated inquiries by plaintiffs attorneys, the defendants have not answered or otherwise pled to the complaint. Accordingly, **the court finds that the defendants are in default and an order of default is hereby entered against them. The plaintiff has submitted a proposed judgment order which grants money damages in various amounts, including punitive damages, and awards various kinds of injunctive relief. The court does not have sufficient information to grant any of the relief set forth in the plaintiff's proposed judgment order.** A hearing will be necessary, and the case is set for a status conference on February 5, 2014 at 10:30 a.m. to discuss what testimony will be necessary and to set a date for the hearing. []

Comp., Ex. A-2 (emphasis added). Debtor's reading of the complaint ignores that "[t]here are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment. Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir.2004); *see* Fed. R. Civ. P. 55(a) (entry of default) & (b) (default judgment). The effect of default is that all well-pleaded allegations in the complaint relating to liability are admitted, and cannot be contested unless the default order is vacated under Rule 55(c). *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, No. 14-2776, 2016 WL 241367, at *6 (7th Cir. Jan. 21, 2016). But entry of default does not determine the rights of the parties in the case until default judgment is entered. *Id.*

Here, judgment for damages after default was entered following a hearing and discovery, and was based on findings and conclusions beyond those established by default, including those necessary for the award of attorney fees and costs. (*See* Ex. A-3, at 2, 21–22.)

Dismissal of the complaint is not warranted by the general principle described in Debtor's motion pertaining to the preclusive effect of default judgments. *See* Motion at ¶ 13. Issue preclusion (also known as collateral estoppel) "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quotation marks and citation omitted). As noted by Debtor, "a default judgment is normally not given preclusive effect under the collateral estoppel doctrine

5

because no issue has been 'actually litigated.'" *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994). However, "there is no uniform agreement on the criteria for giving findings collateral estoppel effect." *In re Catt*, 368 F.3d 789, 791 (7th Cir. 2004) (collecting cases).

Since the judgment in this case was entered by a district court, preclusion "is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). The "federal rule" for precluding relitigation of findings or judgments "is that due process does not require in every case either a hearing or that a particular issue be 'actually litigated'; it requires that the party sought to be precluded have had an opportunity for a hearing." *In re Catt*, 368 F.3d 789, 792 (7th Cir. 2004). "To preclude parties from contesting matters that they have had a *full and fair opportunity to litigate* protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979) (emphasis added).

In this case, the complaint alleges that Debtor and his codefendants were parties to the proceedings that led up to the judgment, were represented by counsel, had a right to offer evidence and given a right to a hearing prior to entry of judgment. The record also reflects that an appearance was filed by an attorney for the defendants prior to entry of default, but that attorney nonetheless failed to answer or otherwise plead to the complaint. Lastly, the judgment that was entered pursuant to the District Court Order incorporated findings and conclusions beyond those that were established by default.

Accordingly, Debtor's motion to dismiss the complaint on the basis that issues determined in the previous action and gave rise to the judgment have no preclusive effect will be denied.

## DISCHARGEABILITY OF A DEBT

### A. False Pretenses, a False Representation, or Actual Fraud

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the

debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). That provision describes three separate grounds for holding a debt to be nondischargeable: false pretenses, false representation, and actual fraud. *In re Jairath*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). Each ground for excepting a debt from discharge under § 523(a)(2)(A) must be separately considered. *In re Jacobs*, 448 B.R. 453, 470 (Bankr. N.D. Ill. 2011).

To except debts from discharge for false pretenses or false representation, a creditor must show: (1) the debtor made a false representation of fact, a representation, (2) which the debtor, either (a) knew was false or made with reckless disregard for the truth or (b) that debtor possessed an intent to deceive or defraud (3) upon which the creditor justifiably relied. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). All three elements must be proven to prevail on § 523(a)(2)(A) claim. *In re Ardisson*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001).

In this case, EA alleges that the judgment arose out of false pretenses, or a series of omissions giving rise to misrepresentations, based on finding in the D.C. Order. "False pretenses in the context of § 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression." *In re Amari*, 483 B.R. 836, 846 (Bankr. N.D. Ill. 2012) (*citing In re Paneras*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996)). An overt misrepresentation is not necessary. *In re Wish*, 472 B.R. 763, 779 (Bankr. N.D. Ill. 2012). Rather, the implication arises when a debtor, with the intent to mislead a creditor, engages in "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, . . . or understanding of a transaction, in which [the] creditor is wrongfully induced by [the] debtor to transfer property or extend credit to the debtor …." *Paneras*, 195 B.R. at 406 (internal quotations omitted); *see also Amari*, 483 B.R. at 846.

In his motion to dismiss, Debtor argues that the complaint fails to allege misrepresentations with particularity. However, the complaint in this case does not seek to show that the actions at issue took place. Rather, it seeks to establish that finding made in the D.C. Order amount to false pretenses and misrepresentations for purposes of § 523(a)(2)(A). "One of the purposes of the particularity and specificity required under Rule

7

9(b) is to force the plaintiff to do more than the usual investigation before filing his complaint." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (internal quotation marks and citation omitted). But the complaint in this case alleges that these actions have already been litigated and determined. EA is not required to allege the specific actions and dates that gave rise to the judgment entered against Richerme in the previous action.

The complaint alleges that Debtor launched a competing business, downloaded business information, concealed parts, while an employee of EA, with the purpose of launching a competing business. The complaint also alleges that Debtor misrepresented that his competing business was an authorized distributor of EA products. These actions are alleged to have given rise to the judgment entered in the prior action, and could amount to false pretenses or misrepresentations for purposes of § 523(a)(2)(A). These allegations suffice at the pleading stage.

Therefore, Debtor's motion to dismiss Count II will be denied.

### B. Fraud or Defalcation by Fiduciary, Embezzlement, or Larceny

The complaint alleges a nondischargeable debt for embezzlement or larceny. Embezzlement means "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Matter of Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1895).). "To prove embezzlement, the creditor must show ... that (1) the debtor appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." *Id.* Embezzlement differs from larceny only in that the original taking was lawful. *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991).

Here, the complaint alleges that, while a trusted employee of EA, Debtor misappropriated EA's inventory and business information. Misappropriation is alleged to have been intentional and fraudulent, by reference to the sanding off of EA trademarks from the misappropriated parts, and subsequent sale of those parts to AMPS's customers. Business information, to which Debtor had access as an employee of EA, is alleged to have

8

been downloaded for use in connection with Debtor's competing company. These acts are alleged to have given rise to the judgment, and could plausibly support a denial of discharge of the judgment under § 523(a)(4)(4).

Therefore, Debtor's motion to dismiss Count III will be denied.

### C. Willful and Malicious Injury

Under §523(a)(6), willful and malicious injury means "(1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). Injury means "a violation of another's legal right, for which the law provides a remedy." *Id.* Willfulness means "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in the original). Maliciously means "in conscious disregard of his duties without cause or excuse; it does not require ill-will or specific intent to do harm." *Id.*

EA has sufficiently alleged these elements. The complaint alleges a debt which arose out of injury to EA's good will, reputation and property. The District Court award of attorney fees entailed a determination that violations were willful and malicious.

Count IV is therefore adequately pleaded and will not be dismissed.

### CONCLUSION

For the foregoing reasons, Richerme's motion to dismiss will be denied by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of February, 2016

FEB - 1 2016

9